Filed 6/21/22 P. v. Whitfield CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY LEON WHITFIELD,<br><br>Defendant and Appellant. | F081609<br><br>(Super. Ct. No. SC076688A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 1999, a jury convicted defendant Timothy Leon Whitfield, in relevant part, of second degree murder and found true allegations he personally used a firearm during the

---

[*]Before Levy, Acting P. J., Peña, J. and Snauffer, J.

commission of the murder in violation of Penal Code section 12022.5, subdivision (a) and he personally and intentionally discharged a firearm which proximately caused great bodily injury or death to another person, not an accomplice, during the commission of the murder in violation of section 12022.53, subdivision (d). (Undesignated statutory references are to the Penal Code.)

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95 in which he asserted he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. The trial court denied the petition based on its conclusion defendant was convicted of second degree murder as the actual killer.

On appeal, appointed counsel for defendant asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant filed a supplemental brief. We affirm.

## BACKGROUND

In 1999, a jury found defendant not guilty of first degree murder, but guilty of second degree murder (§ 187, subd. (a); count 1) and found true allegations he personally used a firearm during the commission of the murder in violation of section 12022.5, subdivision (a); he personally and intentionally discharged a firearm which proximately caused great bodily injury or death to another person, not an accomplice, during the commission of the murder in violation of section 12022.53, subdivision (d); and that he committed the murder for the benefit of, at the direction of, or in association with a criminal street gang in violation of section 186.22, subdivision (b).[1] The court sentenced

___

[1] The jury also convicted defendant of willfully and unlawfully carrying a concealed handgun in a vehicle (former § 12025, subd. (a)(1); count 2), willfully and unlawfully carrying a loaded firearm while being an active gang member (former § 12031, subd. (a)(2)(C); count 3), and willfully and unlawfully owning or having in his possession or under his custody or control a firearm (former § 12021, subd. (a)(1); count 4), and the jury and court found true various related enhancement allegations as well as enhancements related to defendant's prior convictions.

2.

defendant to 15 years to life on count 1, plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, and an additional year for a prior prison enhancement pursuant to section 667.5, former subdivision (b).[2] The court stayed the sentences on the remaining counts and enhancements.

In April 2019, defendant filed a form petition for resentencing pursuant to section 1170.95 in which he checked a box alleging he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He also checked a box requesting the appointment of counsel during the petitioning process. The court appointed counsel to represent defendant.

The People filed an opposition to defendant's petition in which they discussed the facts of the case without citing to the record. They alleged defendant punched the victim in a market after the victim said, "'Hey! How's it going?'" Then, after the victim walked outside, a fight ensued between him, defendant, and a second individual who was with defendant. They alleged that "[d]uring the fight, the [defendant] pulled out a gun and shot [the victim] in the chest, killing him." They emphasized the jury found true allegations defendant personally used a firearm in the commission of murder (§ 12022.5) and he personally used a firearm in the commission of murder "causing death" (§ 12022.53, subd. (d)). They argued defendant was not entitled to relief because his conviction was not predicated on a felony-murder theory. Rather, the jury "expressly found it to be true that [defendant] *personally* discharged a firearm when he murdered [the victim]," so section 1170.95 did not apply They also argued Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), pursuant to which section 1170.95 was enacted, was unconstitutional.

---

[2]Judgment on the two-year gang enhancement to count 1 was originally imposed but then later vacated.

In his reply, defendant denied he was the actual killer and asserted he could not now be convicted of second degree murder under the theory that the death occurred as a natural and probable consequence of the assault on the victim. He moved to strike the facts alleged in the People's response because no reference was made to the record to support them. He further contended there was no basis in the record for the court to conclude, as a matter of law, he was ineligible for relief. He argued, "[w]ithout access to the trial transcript, it is impossible to ascertain what theories were advanced at the trial by the prosecution or the defense, nor is it possible to know what theory of murder the jury relied on to reach its verdict of the lesser included offense of second degree murder." He further alleged, "the jury instructions show that there must have been an argument regarding the legal theory of natural and probable consequences which could only support a verdict of second-degree murder, not first-degree murder." In support, defendant alleged the jury was instructed with CALJIC No. 8.31 regarding second degree murder resulting from an unlawful act dangerous to life and CALJIC No. 8.46 which defines "due caution and circumspection," a phrase used in CALJIC No. 8.45 to define involuntary manslaughter. He argued "[t]hose jury instructions relate to the legal theory of natural and probable consequences of a dangerous, unlawful act which resulted in death." He also noted there was no dispute felony murder was not argued nor was the jury instructed on that theory in this case.

Following multiple continuances, in August 2020, the court held a hearing on the petition. The court noted the hearing was to determine whether a prima facie showing had been made. The court acknowledged the People alleged defendant was the actual killer, to which the prosecutor responded, "He was." Though the People did not provide the court documents from the record, the court denied defendant's petition based on defense counsel's representation she did not disagree with the contention that defendant was the actual killer:

4.

"THE COURT: What I need to know is—what I don't have is—do you have a copy of the appellate opinion, or something I can rely upon for the record.

"[PROSECUTOR]: I don't. I don't with me. I could obtain one easily, Your Honor.

"THE COURT: I need to at least have on the record what I looked at.

"[Defense counsel], do you disagree with the statement of facts that's put forth by [the prosecutor], specifically …, 'During the fight, [defendant] pulled out a gun and shot [the victim] in the chest, killing him'?

"[DEFENSE COUNSEL]: No, Your Honor.

"THE COURT: You don't disagree with that?

"[DEFENSE COUNSEL]: No.

"THE COURT: Given that record, I'm going to accept that as [defense counsel] as an officer of the court not objecting [defendant] was the actual killer therefore he has not made a prima facie case, and it is denied."

Defense counsel then asked the court whether it would like a copy of the appellate opinion because she could send it, but the court responded, "No. I will consider that as part of the record, but since you both agree that's the facts, I don't need to get it and read it. You agree that's what factually happened, I'll accept that and—okay." Accordingly, the court denied defendant's petition, and defendant now appeals the denial.

## DISCUSSION

We appointed counsel, who filed an opening brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, requesting independent review of the record for arguable issues. Appellate counsel notified defendant that she was filing a *Wende* brief and informed defendant he had 30 days from the filing of the brief to submit any claims, arguments, or issues that he wished our court to review. Our court also sent defendant a letter notifying him he could submit a letter stating any grounds on appeal he wanted our court to hear. He filed a letter brief.

## 1.    Defendant's Supplemental Brief

In his brief, defendant asserts "the fact [he] was convicted as the shooter does not exclude [him from relief] as a matter of law."  He contends the exclusionary criteria of section 189, subdivision (e) does not apply because he never alleged he was convicted under a felony-murder theory.  He argues the jury could have relied on the now invalid natural and probable consequences theory in convicting him of second degree murder even if he was the actual killer.[3]  Specifically, he argues, the jury could have convicted him of second degree murder by finding he had "committed an assault on [the victim], the natural and probable consequences of which lead [*sic*] to his death."  He contends the court instructed the jury on that theory, and it could no longer be used to support his murder conviction.  He also argues the most he could have been guilty of was manslaughter under CALJIC No. 8.43, because the crime happened in the heat of passion, "there was no cooling period," and he was acting under the direct and immediate influence of the quarrel or heat of passion.

## 2.    Senate Bill 1437 and Senate Bill 775

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019.  It amends section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability.  (Stats. 2018, ch. 1015, §§ 2–3.)

As a result of these changes, section 188 now provides, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*."  (§ 188, subd. (a)(3), italics added.)  The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised

---

[3]Defendant asks us to "take notice into account the facts of the crime of conviction on this case," but he does not specifically refer to a document or record of which he requests judicial notice.

6.

upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated: "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1170.95, which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, section 1170.95 permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).)

In Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, the Legislature amended the language of section 1170.95 to expand the scope of the petitioning procedure to defendants convicted of attempted murder or

manslaughter under a now prohibited theory. (See § 1170.95, subd. (a).) The legislation also clarified some of the procedural requirements in the statute.

Pursuant to amended section 1170.95, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1170.95, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner has made such a prima facie showing that the petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

In *People v. Lewis* (2021) 11 Cal.5th 952, the California Supreme Court stated the trial court may rely on the record of conviction in determining whether a defendant has made a prima facie showing of entitlement to relief. (*Id.* at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) "'[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' [Citations.]" (*Ibid.*) To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, at pp. 972–974; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### 3.    Analysis

Here, the parties agreed below and defendant agrees on appeal that he was convicted of second degree murder as the actual killer. And, contrary to defendant's

contention, the undisputed fact he was convicted as the actual killer renders him ineligible for relief as a matter of law because he was necessarily convicted of murder based on a still valid theory of express or implied malice. (See Stats. 2018, ch. 1015, § 1, subd. (f) [Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life"].) That is, defendant's liability was not derived from another person's actions or mens rea, but based on his own. (Cf. *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 [explaining the "natural and probable consequences doctrine" is a theory of *aider and abettor* liability]; *People v. Chiu* (2014) 59 Cal.4th 155, 165 ["'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense'"].) Put differently, that defendant was convicted as the actual killer establishes the jury convicted defendant of second degree murder under a theory of malice based upon defendant's own actions and his own mens rea—not the malice of another person *imputed* to him.

Furthermore, pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the record from defendant's prior appeal, which includes the jury instructions given at his trial. The jury instructions confirm defendant was convicted of second degree murder under a still valid theory of malice. The jury was not instructed on felony murder or the natural and probable consequences doctrine. Indeed, the jury was not instructed on aiding and abetting principles, nor did the other instructions permit the jury to otherwise conclude defendant was guilty of murder without finding, beyond a reasonable doubt, that he personally acted with malice aforethought.

Rather, the jury was instructed, "Murder of the second degree is the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation." As defendant acknowledged below, the jury was also instructed on the concept of implied malice: "Murder of the second degree is also the unlawful killing of a human being when, one, the killing resulted from an intentional act. Two, the natural consequences of the act are dangerous to human life. And three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life. When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being." And implied malice is still a valid theory of murder despite Senate Bill 1437's amendments to sections 188 and 189. (See *People v. Gentile* (2020) 10 Cal.5th 830, 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; accord, *People v. Powell* (2021) 63 Cal.App.5th 689, 713 [interpreting *Gentile* to "suggest[] an aider and abettor can be liable for implied malice murder as a theory independent of the natural and probable consequences doctrine"].)

Where, as here, the instructions provide no basis from which the jury could have convicted defendant based upon a now invalid theory, the record refutes defendant's contention he is eligible for relief. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 677; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.) And here, the jury was instructed it could only convict defendant of murder if it found defendant acted with express or implied malice. Thus, the jury necessarily concluded defendant personally harbored malice in convicting him of murder because there was no basis for it to convict defendant under a now invalid theory of liability. Accordingly, he is categorically

10.

ineligible for relief under section 1170.95 as a matter of law. (See *Soto*, *supra*, at p. 1055 [ "[T]he jurors were not provided any instruction on which they could have found [the defendant] guilty of murder under [the natural and probable consequences] doctrine. Rather, under the instructions, the jury necessarily found [the defendant] culpable for murder based on his own actions and mental state"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [affirming denial of § 1170.95 petition on attempted murder convictions where jurors were not instructed on natural and probable consequences doctrine].)

We also reject defendant's attempt to now challenge the sufficiency of the evidence to support his second degree murder conviction. "The mere filing of a section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; accord, *People v. Allison* (2020) 55 Cal.App.5th 449, 461 ["Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding.… The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved"].)

Defendant is ineligible for relief under section 1170.95 as a matter of law. Thus, the court did not err in denying his petition for relief.

We are satisfied no arguable issues exist and defendant's counsel has fully satisfied her responsibilities under *Wende*, *supra*, 25 Cal.3d at pages 441–442 and *People v. Kelly* (2006) 40 Cal.4th 106, 123–124.

## DISPOSITION

The judgment is affirmed.

11.